# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| R.P. | § | |
| | § | |
| v. | § | SA-10-CV-584-XR |
| | § | |
| ALAMO HEIGHTS I.S.D. | § | |

**ORDER**

On this day came on to be considered Defendant's Motion for Summary Judgment (doc. no. 21) and R.P.'s motion to supplement the administrative record (doc. no. 29).

**BACKGROUND**

It is uncontested that R.P. is an elementary school student in the Alamo Heights Independent School District (AHISD) receiving special education services for mental retardation and speech impairment. Pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, et seq. (IDEA), an individualized educational program (IEP) was developed for R.P. by an Admissions, Review & Dismissal (ARD) Committee. *See* 20 U.S.C. § 1414(d)(1)(B); 19 Tex. Admin. Code § 89.1050(c).

On November 16, 2007, the ARD Committee determined that R.P. also qualified for special education as a student with autism. On or about this date

R.P.'s parents were also reminded that R.P. needed an eye examination in order to complete a functional vision assessment. R.P. received an eye examination on December 11, 2007, and the doctor found no gross vision deficits and no apparent visual loss. A functional vision assessment was completed on March 28, 2008, and the evaluator noted that based on the December 2007 eye examination, R.P. did not meet the eligibility criteria to continue her designation as a visually impaired student.[1]

During an April 4, 2008 ARD Committee, the Committee recommended that R.P. receive speech therapy, social skills training in a special education classroom, and special education instruction in reading, writing, math and self help skill. The remainder of R.P.'s school day was to be spent in regular education classroom with accommodations and support. R.P.'s father requested one-on-one applied behavioral analysis (ABA) therapy for two hours each day, but his request was denied because the program recommended for R.P. incorporated ABA techniques. During a May 12, 2008 ARD Committee meeting, R.P.'s father requested additional time for speech and occupational therapy, but that request was denied.

On October 14, 2008, another ARD Committee meeting was convened to consider R.P.'s parents' request that the time R.P. spent in regular education classes be decreased. That request was granted and an additional hour per day with a special education teacher was assigned.

---

[1] She continued her eligibility for special education on the basis of autism, mental retardation and speech impairment.

On December 11, 2008, an additional ARD Committee meeting was held. It was recommended that R.P. receive various supplementary aids. The Committee agreed that a minimum of 40 sessions of speech therapy continued to be appropriate, but R.P.'s parents disagreed requesting at least 60 sessions.

During the Spring semester of the 2008-2009 school year, school officials opined that R.P. was making progress in her independent use of low-tech communication systems, and began to explore her use of more advanced communication aids such as Tango and Dynavox.

On May 20, May 28, and June 4, 2009, additional ARD Committee meetings were held. R.P.'s father expressed dissatisfaction with a number of issues, e.g. toileting[2] and the strategies for teaching autism (STAR) program. He also requested an Independent Educational Evaluation (IEE)[3] and expressed concern about what he called a "deteriorating" condition in the special education classroom.

The ARD Committee again met on November 13, 2009. At this meeting, R.P.'s father requested that R.P. be allowed to take the Dynavox communication device home. The request was granted, but R.P.'s father was required to sign an agreement that he would be responsible for any damage to the device beyond normal wear and tear. R.P.'s father signed the agreement, but under protest.

---

[2] On September 11, 2009, an occupational therapist opined that R.P. may not be sensing a need to urinate and that she may not possess the muscle control necessary to hold her urine. It was recommended that R.P. be seen by a pediatric urologist (expense to be borne by the school district).

[3] The due process hearing officer found that the parents failed to submit a written request for IEE as required by district policy.

3

On November 24, 2009, R.P.'s parents requested the due process hearing that is the subject of this lawsuit. Their request stated 23 claims or issues.

The due process hearing was held on March 8 and 9, 2010. The hearing officer heard from 15 witnesses, reviewed 3,400 pages of documents and listened to ten hours of ARD meeting tapes.

On April 12, 2010, the hearing officer signed a written decision. In that decision he noted that the "ARD meetings were adversely impacted by a failure of a key stakeholder [R.P.'s father] to remain productive and consistently participate in a process that demands cooperation and consensus." The hearing officer noted that R.P. continues to struggle with toileting. The hearing officer, however, concluded that R.P. failed to demonstrate that the school district failed to provide her with a free appropriate public education (FAPE). [4]

---

[4] In claim 1, R.P. complained about the duration of her general education setting as determined by the ARD Committee. The Hearing Officer concluded that because of R.P.'s need for intensive specialized education techniques and curriculum, her IEP allowed for variability. He concluded that R.P. failed to establish that her general education inclusion was inappropriate, and she failed to establish that she was denied a FAPE.

In claim 2, R.P. complained that AHISD failed to assess her in all areas of suspected disabilities, specifically any vision issues. The hearing officer found that the record did not support this allegation.

In claims 3, 4,5,8, and 9, R.P. claimed that AHISD had "predetermined decisions" prior to the ARD meetings, which resulted in the denial of parental participation and the parents' rights to have concerns expressed. The hearing officer found that the record did not support these allegations. To the contrary, the hearing officer found that the father frequently used ARD meetings and was "needlessly combative, insulting and unproductive."

In claims 6,10, 11, and 17, R.P. alleged that the goals and objectives stated in the IEP were confusing and failed to adequately set forth whether the student was making progress. She further complained that a functional behavioral assessment was not conducted. The hearing officer stated that "[w]hile the clarity of Respondent's specific ARD document formatting could be improved, it is [sic] certainly allow [sic] the reader to determine the Student's educational progress. Some of the goals and objectives could be improved by a quantified element of success." That said, the hearing officer concluded that AHISD provided the parents with "ample information about the Student's educational progress...." The hearing officer further found that a behavioral intervention plan (BIP) and functional behavioral assessment were unnecessary. With regard to the use of the phrase "remainder of the school

On July 9, 2010, R.P. filed this lawsuit alleging that the hearing officer erred in virtually all of his rulings. On April 15, 2011, AHISD filed its motion for summary judgment.

---

day," the Hearing Officer noted that the phrase should be amended to record time as accurately as possible, but nevertheless found that there was no denial of a FAPE.

In claim 7, R.P. alleges that AHISD has failed to appropriately address toileting training. The hearing officer found that R.P. has had inconsistent success in toilet training at school and at home. He nevertheless concluded that even though no significant progress had been achieved, the IDEA does not require a school district to cure an educational disability. Relying upon *Houston I.S.D. v. Bobby R.*, 200 F. 3d 341 (5th Cir. 2000) and *Clear Creek I.S.D. v. D.K.*, 400 F. Supp. 2d 991 (S.D. Tex. 2005), he further concluded that a student's lack of progress on a single objective is not a denial of a FAPE.

In claim 12, R.P. alleged that the school district incorrectly determined that R.P. was able to comply with the student code of conduct. The hearing officer found that R.P. either did not understand the code of conduct, or was indifferent to it. Nevertheless, he concluded that this incorrect determination did not result in a denial of a FAPE.

In claim 13, R.P. alleged that AHISD failed to conduct an IEE and FIE. The hearing officer concluded that no written request was submitted by the parents, and accordingly there was no violation by the school district.

In claim 14, R.P. alleged that AHISD failed to consider an occupational therapist report prepared in the Summer of 2009. The hearing officer found that AHISD reviewed that report during the September 15, 2009 ARD and incorporated the O.T.'s findings in R.P.'s educational program.

In claims 15 and 20, R.P. alleged that AHISD failed to consider an assistive technology device for communication. The hearing officer found, in part, based upon R.P.'s mother's statements that substantial progress in communication has been made with use of the Dynavox device and thus R.P. has received a FAPE from the appropriate AT initiative. The hearing officer stated that it may have been inappropriate for AHISD to "shift the risk of loss/costs of a necessary educational device to the Student's parents." Nevertheless, he found that there was no denial of a FAPE.

In claims 16, 22 and 23, R.P. alleged that AHISD failed to provide the parents with certain IEP progress reports. The hearing officer states that there may have been a failure to provide a particular progress report, but that in light of 22 ARD meetings, multiple pre-ARD meetings, "and nearly continual conflict about some aspect of the Student's educational program or another makes this allegation seem superfluous."

In claim 18, R.P. alleged that AHISD should have purchased a Pants Alert system as a necessary AT device to address the toileting issue. The hearing officer found that there was confusion as to whether the device was incorporated into the IEP, but even if there was a failure to purchase the device there was no denial of a FAPE.

In claim 19, R.P. alleged that AHISD destroyed educational records. The hearing officer found that this was not a violation of the IDEA.

In claim 21, R.P. alleged that AHISD failed to provide faculty and staff with appropriate training regarding her disability. The hearing officer found that the record did not support that allegation.

## Analysis

"Congress enacted the IDEA to ensure that children with disabilities will have access to public education, including special education and related services. The IDEA requires school districts in states receiving designated federal funds to implement procedures and policies that assure that each disabled student receives a 'free appropriate public education,' or 'FAPE.' To ensure that a child receives a FAPE, parents and school districts collaborate to develop an Individualized Education Plan ("IEP")[5] that is "reasonably calculated to enable the child to receive educational benefits.'" *R.H. v. Plano Independent School Dist.*, 607 F.3d 1003, 1008 (5th Cir. 2010)(citations omitted).

"The IDEA does not entitle a disabled child to an IEP that maximizes his potential, but instead only guarantees a 'basic floor' of opportunity 'specifically designed to meet the child's unique needs, supported by services that will permit him to benefit from the instruction.' The educational benefit, however, 'cannot be a mere modicum or de minimis; rather, an IEP must be likely to produce progress, not regression or trivial educational advancement.'" *Id.*

"The district court, reviewing the decision of a hearing officer under the IDEA, accords 'due weight' to the hearing officer's findings but ultimately reaches 'an independent decision based upon the preponderance of the evidence'

---

[5] The Fifth Circuit has identified four factors for analyzing whether an IEP was reasonably calculated to provide a meaningful educational benefit under the IDEA: (1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key "stakeholders"; and (4) positive academic and non-academic benefits are demonstrated. *See Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 249 (5th Cir. 1997), *cert. denied*, 522 U.S. 1047 (1998).

that is 'virtually de novo.' The role of the judiciary is not to second-guess the decisions of school officials or to substitute their plans for the education of disabled students with the court's. Instead, the court's role is limited to determining whether those officials have complied with the IDEA. The IDEA creates a presumption in favor of a school district's educational plan, placing the burden of proof, by preponderance of the evidence, on the party challenging it." *Id.* at 1010.

In determining whether a student has been provided a free appropriate public education, the Court must examine "(1) whether the state complied with the procedural requirements of IDEA, and (2) whether the challenged IEP was reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). The Supreme Court has made clear that the IDEA does not grant permission for "courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206. Rather, courts must give "due weight" to the state proceedings. *Id.*

### R.P.'s motion to supplement the administrative record

R.P. seeks leave to file tapes of various ARD meetings that were not considered by the hearing officer. It is uncontested that R.P. was in possession of these tapes, but failed to timely tender these exhibits to the AHISD the requisite five days prior to the hearing. Accordingly, the hearing officer excluded them from evidence. R.P. argues, relying upon *Town of Burlington v. Dep't of*

*Educ.*, 736 F. 2d 773 (1st Cir. 1984), *aff'd*, 471 U.S. 359 (1985), that this is a gap in the administrative record caused by AHISD and requires correction. R.P.'s reliance upon *Town of Burlington* is misplaced. Here, R.P. was in possession of the tapes prior to the hearing and failed to timely disclose the tapes. The hearing officer made a correct decision to exclude the tapes.

In addition, R.P. states that a hearing or trial is necessary, or in the alternative the record must be supplemented with affidavits from three witnesses. R.P. states that these witnesses would provide testimony regarding AHISD's "continuing effort to hold parent's financial [sic] responsible for Dynavox...." Two of the witnesses would also testify about the independent educational evaluation requests. It is uncontested that the district allowed R.P. to take the device home and it is also uncontested that the parents were asked to sign an agreement to reimburse the district for any loss or damage to the device (beyond normal wear). Accordingly, R.P. fails to establish why the record requires supplementation. Likewise, R.P. fails to contest that she did not file a written request for an IEE pursuant to district policy.

R.P.'s motion for leave to supplement administrative record (doc. no. 29) is denied.

**R.P.'s Response to Defendant's motion for summary judgment**

R.P. responds that there are material fact issues that require denial of the motion for summary judgment. Plaintiff contests any statements or findings made by the hearing officer that R.P.'s father's conduct was improper. No

competent summary judgment evidence, however, is attached and the complaint is conclusory.

R.P. complains that no assistive technology device was provided under the November 16, 2007 report and there was a one year delay in providing the device, resulting in the denial of a FAPE. This is contradicted by the record. R.P. was successfully utilizing communication cards in the classroom during this time frame.

R.P. complains that AHISD did not timely review an occupational therapist's report, but assuming this is correct, she fails to state how any untimely review resulted in the denial of a FAPE.[6]

R.P. complains that her father was not provided a copy of an AT evaluation and other documentation, but fails to refute the hearing officer's determination that, given the numerous ARD meeting and teacher conferences

---

[6] A free appropriate public education "consists of both 'special education' and 'related services.' 20 U.S.C. § 1401(9). The statute defines 'special education' as 'specially designed instruction ... to meet the unique needs of a child with a disability.' 20 U.S.C. § 1401(29). The statute defines 'related services' to include 'transportation, and such developmental, corrective, and other supportive services (including ... psychological services, ... social work services, ... counseling services, ... and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education....' 20 U.S.C. § 1401(26)(A). A school district satisfies its obligation to provide a FAPE to a disabled child 'by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction.' *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 203 (1982). 'The primary tool in assuring that a [FAPE] is provided to all eligible children with disabilities is the requirement that the state create an individualized education plan ("IEP") for each disabled child.' *Miller v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1236 (10th Cir. 2009). 'The IEP is a written statement that sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the child has met the goals.' *Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1043 (10th Cir. 1993); *see* 20 U.S.C. § 1414(d)(1)(A)." *Jefferson County School Dist. R-1 v. Elizabeth E. ex rel. Roxanne B.*, --- F. Supp. 2d ----, 2011 WL 2565513 (D. Colo. 2011).

in this case, any isolated failures to provide documentation did not result in the denial of a FAPE.[7]

R.P. disputes that any ARD meetings were compromised because of his behavior. Other than the conclusory statement that parents must be able to participate in ARD meetings, R.P. fails to demonstrate how any alleged premature terminations of meetings resulted in the denial of a FAPE.

R.P. complains that an AT evaluation should have been completed by October 2009, but was not. That does not appear to have been raised as an issue for the due process hearing. Even assuming it was, R.P. fails to demonstrate how any delay resulted in the denial of a FAPE.

R.P. complains that her father was required to sign an agreement to be financially responsible for any loss or damage (beyond normal wear) to the Dynovox device. R.P. apparently argues that a school district must provide any assistive device requested by a parent to a student, without limits of any kind on use or loss. The Court is not aware of any cases to support this argument, and Plaintiff does not provide any citation. Even assuming AHISD incorrectly required the signing of the financial loss agreement, R.P. fails to demonstrate how this agreement resulted in the denial of a FAPE. R.P. was provided the

---

[7] "An IEP's failure to clear all of the Act's procedural hurdles does not necessarily entitle a student to relief for past failures by the school district. Instead, this court must determine whether the procedural error resulted in "substantive harm to the child or his parents"; "deprive[d] an eligible student of an individualized education program"; or "result[ed] in the loss of [an] educational opportunity." In sum, then, the courts inquire whether the violation resulted in the denial of a FAPE." *Sytsema ex rel. Sytsema v. Academy School Dist. No. 20*, 538 F.3d 1306 (10th Cir. 2008)(citations omitted).

device for use at school and home.

R.P. complains that there were no revisions to her toileting program and that resulted in the denial of a FAPE. AHISD reviewed an OT report and the report did not recommend any changes to the IEP. Although R.P. was not completely toilet trained, there is not sufficient evidence in the record to support a finding that her toileting issues were considerable, such that the IEP was not "reasonably calculated" to confer educational benefits.[8]

R.P. complains that she was not given additional vision assessments. Although acknowledging that the ophthalmologist's report gave R.P. a satisfactory finding, R.P.'s father states that the doctor verbally told him that R.P. had a cortical vision impairment. The school district's reliance on the written report was not improper. Further, Plaintiff has failed to provide any evidence that R.P. does indeed suffer from any vision impairment. Finally, R.P. could have sought, but failed to file, a written request for IEE seeking an additional vision assessment.

Further, R.P. questions the abilities of the district's special education

---

[8] Actual implementation of the IEP is important. *See* 20 U.S.C. § 1401(8); *Bobby R.*, 200 F.3d at 348; *Socorro Indep. Sch. Dist. v. Angelic Y. ex rel. Angela T.*, 107 F.Supp.2d 761, 767 (W.D. Tex. 2000). However, an FAPE does not demand that every element of the IEP be implemented. The Fifth Circuit has held that "a party challenging the implementation of an IEP must show more than a de minimis failure to implement all elements of that IEP, and, instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP." *Bobby R.*, 200 F.3d at 349. Generally, "[a]ll that a school is required to do is ensure that its students are receiving educational benefit." *Sylvie M. ex rel. Diane R. v. Bd. of Educ. of Dripping Springs Indep. Sch. Dist.*, 48 F.Supp.2d 681, 698 (W.D. Tex. 1999). A child need not "improve in every area to obtain an educational benefit from his IEP." *Bobby R.*, 200 F.3d at 350.

11

teachers, complaining that one could not explain terms or give examples of the techniques applied in the classroom. The record, however, establishes that the teacher was properly credentialed and that she was merely unable to recall specific examples. R.P. also relies upon a review of AHISD's educational programming for students with autism generally to conclude that AHISD must have failed R.P. specifically. That leap fails to establish a denial of R.P.'s right to a FAPE.

R.P.'s parents complain that the ARD developed a BIP without conducting a Functional Behavioral Assessment. The Court is unsure what R.P.'s parents are alleging. By all accounts, R.P. is a model student and her only issues are those related to her disabilities. A FBA was not required, and even if one was required, R.P. fails to establish that such an omission resulted in the denial of a FAPE.

Finally, R.P. alleges that the IEP was "vague, immeasurable and repetitive," and lacked specificity in setting forth her time to be spent in general education. Again the Court is unsure of her parents' complaint. At one point in time they requested that R.P. be given additional special education time. Now it appears that they are claiming that she should be provided more time in general education classes. In any event, R.P. fails to establish that any vagueness resulted in the denial of a FAPE.

## Conclusion

After conducting its own review of the administrative record in this case, the Court finds that R.P. received a FAPE in the least restrictive environment.

Plaintiff has failed to meet her burden of persuading the Court that the Hearing Officer's Determination of no denial of a FAPE was wrong.

"We sympathize with [R.P.'s] family and do not question the enormous burdens they face. Our job, however, is to apply the law as Congress has written it and the Supreme Court has interpreted it. Though IDEA is certainly evidence that Congress intends that States, acting through local school districts, provide assistance to disabled students and their families, the assistance that IDEA mandates is limited in scope. The Act does not require that States do whatever is necessary to ensure that all students achieve a particular standardized level of ability and knowledge. Rather, it much more modestly calls for the creation of individualized programs reasonably calculated to enable the student to make some progress towards the goals within that program. The findings of [the hearing officer and our de novo review] indicate that this standard has been met here."[9]

Defendant's Motion for Summary Judgment (doc. no. 21) is granted. R.P.'s motion to supplement the administrative record (doc. no. 29) is denied.

The Clerk is directed to enter a Judgment in favor of Defendant. Defendant is awarded costs and shall file a bill of costs in the form required by the Clerk of the Court, with supporting documentation, within fourteen days of the Judgment.

---

[9] *Thompson R2-J School Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1155 (10th Cir. 2008).

It is so ORDERED.

SIGNED this 9th day of August, 2011.

                                                                        _____
                                                                         XAVIER RODRIGUEZ
                                                                         UNITED STATES DISTRICT JUDGE